# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL CASE NO. 1:10cv155

FRANK E. KLOPFER and wife KATHY M. KLOPFER; )
and DUSTIN P. SWARTZ and wife KRISTIN H. SWARTZ, )
  )
                            **Plaintiffs,** )
  )
         **vs.** )
  )
QUEENS GAP MOUNTAIN, LLC, a North Carolina limited )
liability company; DEVINSHIRE LAND DEVELOPMENT, )
LLC, a North Carolina limited liability company; QUEENS )
GAP ACQUISITION, LLC, a Delaware limited liability )
company; COVE CREEK, LLC, a North Carolina limited )
liability company; D. F. McCARTHY INVESTMENTS XVIII, )
LLC, an Ohio limited liability company; QUEENS GAP )
HOLDING COMPANY, LLC, an Ohio limited liability company; )
DEVIN McCARTHY, individually and as Trustee of the DEVIN )
F. McCARTHY REVOCABLE TRUST, dated September 14, )
1994; JANIS L. McCARTHY, individually and as Trustee )
of the DEVIN F. McCARTHY REVOCABLE TRUST, )
dated September 14, 1994; and KEITH VINSON, individually, )
  )
                         **Defendants.** )
_____ )

## MEMORANDUM OF DECISION
## AND ORDER

**THIS MATTER** is before the Court on the following:

1.    The Motion to Compel Arbitration and to Stay Proceedings [Doc. 24] of

the Defendants D. F. McCarthy Investments XVIII, LLC; Queens Gap

Holding Company, LLC; and Devin McCarthy (the McCarthy Defendants);

2.    The Motion to Stay this Action and Compel Arbitration [Doc. 29] of the Defendants Queens Gap Mountain, LLC; Devinshire Land Development, LLC; Queens Gap Acquisition, LLC; Cove Creek, LLC; and Keith Vinson (the Queens Gap Defendants); and

3.    The Motion to Reconsider of Defendants D. R. McCarthy Investments XVIII, LLC; Queens Gap Holding Company, LLC; Devin McCarthy and Janis L. McCarthy or, in the alternative, Defendant Janis L. McCarthy's Motion to Dismiss [Doc. 44].

## PROCEDURAL AND FACTUAL BACKGROUND

This action was initiated on July 27, 2010 and, by leave of Court, an Amended Complaint was filed on February 28, 2011.[1]  [Doc. 39].   In the Amended Complaint, it is alleged that in 2007 the Plaintiffs purchased lots from the Defendants in the Queens Gap Subdivision, a luxury planned community in Rutherford and McDowell Counties, North Carolina.  [Id.]. Each of the Lot Purchase Agreements entered into by the parties included a section entitled "Subdivison Improvements" in which the Seller, Queens Gap

---

[1]The pending motions were filed prior to the amendment but are not affected by the amended pleading.

Mountain, LLC (Queens Gap), agreed to make certain subdivision improvements which would provide the infrastructure necessary for the construction of residences, such as water and sewer, as well as a golf course and other amenities. [Id.]. The infrastructure required for the Plaintiffs to construct residences on their lots and these amenities have never been completed and the Plaintiffs claim that this constitutes default by the Defendants under the terms of the contracts. [Id.]. The Plaintiffs also claim that as a result of the default, the value of the lots has decreased. [Id.]. In the Amended Complaint, the following causes of action are alleged: (1) fraudulent inducement to purchase the lots; (2) fraud; (3) breach of the implied warranty that the lots would be suitable for use for residential purposes; (4) violations of the Interstate Land Sales Full Disclosure Act (ILSFDA), 15 U.S.C. §§1701, *et seq*.; (5) unfair and deceptive trade practices in violation of N.C. Gen. Stat. §75-1.1; and (6) unjust enrichment and constructive trust. [Id.]. In their Answers, the Defendants plead the mandatory arbitration clauses in the Lot Purchase Agreements and based thereon have moved to stay this action and to compel arbitration. [Doc. 46 at 34; Doc. 47 at 31-32].

The parties agree that the relevant contracts are the Lot Purchase Agreements entered into by the Plaintiffs with the Defendant Queens Gap. [Doc. 25 at 1; Doc. 28 at 6]. They also agree that the relevant language of

3

these contracts is as follows:

18.   Defaults and Remedies.

...

b.   <u>By Seller</u>.   If Seller defaults under this Agreement, Purchaser, at its election, may: (i) avail itself of the arbitration rights contained herein below ...  [.] Purchaser hereby waives the right to exercise any and all remedies at law or in equity except as expressly stated in this subsection.

c.   <u>Arbitration</u>.  At the option of Seller or Purchaser, any dispute relating to a default under the terms of this Agreement may be submitted to arbitration.

...

(5)   In the event an arbitration demand is elected, Purchaser agrees that it shall refrain from commencing any action at law or in equity against Seller pursuant to a default by Seller under the terms of this Agreement, including but not limited to, the commencement of an action for specific performance[.]  If Purchaser maintains such an action at law or in equity, ... Seller shall be entitled to go before the presiding judge of a court of competent jurisdiction, ex parte, and obtain an immediate order dismissing the action[.]

**NOTICE TO PURCHASER**

**THIS AGREEMENT PROVIDES THAT DISPUTES BETWEEN PURCHASER AND SELLER MAY BE RESOLVED BY BINDING ARBITRATION.   THIS MEANS THAT PURCHASER AND**

**SELLER GIVE UP THE RIGHT TO GO TO COURT TO ASSERT OR DEFEND RIGHTS UNDER THIS AGREEMENT. THE RIGHTS OF THE PARTIES WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT BY A JUDGE AND JURY. SELLER AND PURCHASER ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN THE RULES FOLLOWED IN A COURT. ARBITRATOR DECISIONS ARE AS ENFORCEABLE AS ANY COURT ORDER AND ARE SUBJECT TO VERY LIMITED REVIEW BY A COURT.**

[Doc. 25-1 at 11-12; Doc. 28-1 at 1-2] (bold in original).

Each of the Plaintiffs in this lawsuit signed his and/or her initials after this paragraph as did Michael McNamee as the attorney-in-fact for Devin McCarthy (McCarthy), the manager of Queens Gap. [Doc. 25-1, at 12, 15; Doc. 25-2, at 12, 15; Doc. 28-1, at 2, 4, 7]. In addition to the above quoted language, the contracts contain detailed procedures for selection of an arbitrator pursuant to the Commercial Arbitration Rules published by the American Arbitration Association. [Doc. 25-1 at 11; Doc. 25-2 at 11].

The parties do not dispute that the Defendants, including Queens Gap, have not provided the infrastructure necessary for the construction of residences on the lots owned by the Plaintiffs.

## STANDARD OF REVIEW

The Federal Arbitration Act (FAA) provides that any written provision to resolve by arbitration a controversy arising pursuant to a contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract."[2]  9 U.S.C. §2.   The parties do not dispute that the contracts at issue are transactions involving commerce and that the FAA applies.  See 15 U.S.C. §1703(a). "As a result of th[e] federal policy [stated in the FAA] favoring arbitration, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'"  Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc., 380 F.3d 200, 204 (4th Cir. 2004) (emphasis omitted) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765, 785 (1983)).  The language of the statute is clear; arbitration must be compelled if the parties have entered into a valid arbitration agreement and the dispute falls within the scope thereof.  Id.  The pertinent language of the FAA is as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial

---

[2]Although state law determines questions related to the validity and enforceability of contracts generally, the FAA created a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within coverage of the Act."  International Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH, 206 F.3d 411, 417 n.4 (4th Cir. 2000).

of the action until such arbitration has been had in accordance with the terms of the agreement[.]

9 U.S.C. §3.

In determining whether the dispute at issue is one which should be resolved though arbitration, this Court "engage[s] in a limited review to ensure that the dispute is arbitrable -- i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." Murray v. United Food and Commercial Workers Int'l Union, 289 F.3d 297, 302 (4th Cir. 2002).

## DISCUSSION

**The validity of the arbitration agreement.**

The Plaintiffs first argue that no valid agreement to arbitrate was formed by the parties. "The essential thrust of the [FAA] ..., is to require the application of contract law to determine whether a particular arbitration agreement is enforceable; thereby placing arbitration agreements 'upon the same footing as other contracts.'" Raper v. Oliver House, LLC, 180 N.C.App. 414, 419-20, 637 S.E.2d 551, 554 (2006) (citation omitted); Granite Rock Co. v. Int'l Bhd. of Teamsters, ___ U.S. ___, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010); Murray, 289 F.3d at 302 (noting that court first must determine if an agreement to arbitrate was formed, then must assess whether the dispute falls within the scope of that agreement). "When making this determination,

[courts] should apply 'ordinary state-law principles that govern the formation of contracts.'" Gen. Elec. Capital Corp. v. Union Corp. Fin. Group, Inc., 142 F. App'x. 150, 152 (4th Cir. 2005) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924,131 L.Ed.2d 985, 994 (1995)). "Under North Carolina law, a valid contract 'requires offer, acceptance, consideration, and no defenses to formation.'" Hightower v. GMRI, Inc., 272 F.3d 239, 242 (4th Cir. 2001) (quoting Koltis v. N.C. Dep't of Human Res., 125 N.C. App. 268, 271, 480 S.E.2d 702, 704 (1997)). The parties here do not dispute that the Lot Purchase Agreements were valid contracts. "At issue in the present case is whether there was mutual assent" with regard to whether any dispute would be resolved by binding arbitration. Id.

> North Carolina has expressed strong support for utilizing arbitration to settle disputes. This "strong public policy" has led the North Carolina courts to conclude that "where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." Thus, North Carolina law directs [this Court] to favor arbitration in cases in which the facts support the conclusion that the parties formed an arbitration agreement.

Id.

The Plaintiffs claim that no enforceable agreement to arbitrate was formed because the language of the contract used the permissive word "may"; e.g., "If Seller defaults under this Agreement, Purchaser, at its election, may:

8

(i) avail itself of the arbitration rights contained herein below;" "At the option of Seller or Purchaser, any dispute relating to a default under the terms of this Agreement <u>may</u> be submitted to arbitration;" "**DISPUTES BETWEEN PURCHASER AND SELLER <u>MAY</u> BE RESOLVED BY BINDING ARBITRATION**." [Doc. 25-1, at 11; Doc. 25-2, at 11] (bold in original, other emphasis provided). Thus, they argue the agreement was merely an illusory promise because performance was optional. <u>Bowman v. Hill</u>, 45 N.C.App. 116, 117-18, 262 S.E.2d 376 (1980) ("An apparent promise which, according to its terms, makes performance optional with the promisor no matter what may happen or no matter what course of conduct in other respects he may pursue, is in fact no promise.").

The Defendants respond that, read as a whole, the contract language requires mandatory arbitration <u>if either party elects to arbitrate</u> the disputes at issue. Thus, performance was not unconditionally optional; if either party elected to arbitrate, arbitration became mandatory.

The Defendants are correct that the phrases cited by the Plaintiffs may not be read out of context from the entire contract. <u>See</u> <u>Levin v. Alms and Associates, Inc.</u>, 634 F.3d 260, 267 (4th Cir. 2011) ("Our precedent instructs that the contract must be read 'as a whole.'") (citation omitted). The use of the permissive word "may" relates solely to the fact that either party might make

such an election.  Wagoner v. American Family Life Assur. Co. of Columbus, No. 1:08CV394, 2009 WL 1405524, at *4 (M.D.N.C. May 18, 2009) (enforcing arbitration clause located in document directly above plaintiff's signature which read: "This contract contains an arbitration agreement which may be enforced by the parties.").  The language also clearly states in prominent, bold-faced and capitalized print that if either party elected arbitration, it would be mandatory and binding, that it would be a faster process than access to the courts, and that the dispute would be resolved by a neutral arbitrator.  See Hightower, 272 F.3d at 242 ("North Carolina law directs us to favor arbitration in cases in which the facts support the conclusion that the parties formed an arbitration agreement."); Raper, 180 N.C. App. at 416, 637 S.E.2d at 552 (noting plaintiff's signature beneath "prominent, bold-faced print" which contained arbitration clause).  "It is a well-settled principle of legal construction that it must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." D.P. Solutions, Inc. v. Xplore-Tech Services Private Ltd., 710 S.E.2d 297, 300 (2011) (quoting Self-Help Ventures Fund v. Custom Finish, LLC, 199 N.C. App. 743, 747, 682 S.E.2d 746, 749 (2009), app. dismissed, 363 N.C. 856, 694 S.E.2d 392 (2010)).  "The interpretation of the terms of an arbitration agreement are governed by contract principles and

parties may specify by contract the rules under which arbitration will be [required]." <u>Trafalgar House Construction v. MSL Enterprises, Inc.</u>, 128 N.C. App. 252, 256, 494 S.E.2d 613 (1998). The language of the contract at issue herein, taken as a whole, unambiguously shows the parties' intention to submit to binding arbitration upon election by either party. Moreover, even if the language of the contract, read as a whole, did not clearly show the parties' intent, the "FAA favors arbitration where the parties' intent is unclear[.]" <u>Perdue Farms, Inc. v. Design Build Contracting Corp.</u>, 263 F. App'x. 380, 384 (4th Cir. 2008).

The Plaintiffs alternatively argue that the contract was not mutually beneficial to both sides, thus showing a lack of mutual assent. This argument is based on language in the contract to the effect that the agreement to arbitrate does not limit the rights and remedies available to the Seller in the event of a default by the Purchaser. [Doc. 25-1 at 12]. This, however, does not negate the agreement to arbitrate; instead, it preserved the Seller's right to terminate the contract and retain the deposit in the event of the Purchaser's default in the purchase of the lot. Moreover, there is no requirement that the remedies contained within a contract for breach thereof be the same for both parties. <u>Fairview Developers, Inc. v. Miller</u>, 187 N.C. App. 168, 173, 652 S.E.2d 365, 368 (2007), <u>disc. rev. denied</u>, 362 N.C. 176, 658 S.E.2d 484

(2008) (recognizing the ability to contractually limit remedies to which a party otherwise might be entitled).

The Plaintiffs next claim that neither party has demanded arbitration. Moreover, they argue, the Defendants did not provide notice to the Plaintiffs of an election to arbitrate. This argument, however, is inconsistent with the record.  The Defendants sold lots to the Plaintiffs and received payment for those lots.  They had no reason to demand arbitration until Plaintiffs instituted this action.  The arbitration clause was raised in each of the Answers.  Prior to entry of a pre-trial order and case management plan, the McCarthy Defendants moved to compel arbitration.  These actions by the Defendants clearly put the Plaintiffs on notice of their demand for arbitration, and such action was timely.  Murray, 289 F.3d at 300-01; In re Mirant Corp., 613 F.3d 584 (5th Cir. 2010) (failure to demand arbitration does not alone constitute waiver of that right but asserting an arbitration provision without moving to compel for eighteen months constituted waiver); Forrester v. Penn Lyon Homes, Inc., 553 F.3d 340, 343 (4th Cir. 2009) (noting that even the failure to assert an arbitration clause does not constitute default of right thereto); C.B. Fleet Co., Inc. v. Aspen Ins. UK Ltd., 743 F.Supp.2d 575 (W.D.Va. 2010).  In any event, "questions of mere delay ... and untimeliness raised to defeat compelled arbitration are issues of procedural arbitrability exclusively reserved

for resolution by the arbitrator." Glass v. Kidder Peabody & Co., 114 F.3d 446, 456 (4th Cir. 1997); Sakrete of North America, LLC v. Armtec Ltd., No. 3:11-CV-00165-GCM, 2011 WL 3204482, at *4 (W.D.N.C. Jul. 27, 2011) ("Once it is determined that the parties agreed to submit the issue to arbitration, delay will not defeat a motion to compel arbitration."); Smith Barney, Inc. v. Bardolph, 131 N.C. App. 810, 509 S.E.2d 255 (1998).

Plaintiffs' argument appears to be that since the Defendants did not demand arbitration by some document separate from the pleadings in this action that the provision is waived. Plaintiffs, however, cite to no authority supporting this proposition. The Court concludes this argument to be of no merit.

The Plaintiffs next claim that the agreement to arbitrate is unconscionable. The question of unconscionability is one of state law. Rent-a-Center, West, Inc. v. Jackson, __ U.S. __, 130 S.Ct. 2772, 2785 n.7, 177 L.Ed.2d 403 (2010). Plaintiffs base this claim on the following facts: (1) the Lot Purchase Agreements were drafted by attorneys for Queens Gap; (2) the Plaintiffs received a cover letter concerning the purchase contracts which directed them to initial the arbitration clause but failed to explain it; (3) the Plaintiffs were not advised to retain counsel and did not do so; and (4) there was a disparity in financial sophistication among the parties.

Unconscionability is an affirmative defense and the party asserting it has the burden of proof.  Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 102, 655 S.E.2d 362 (2008).

> A court will find a contract to be unconscionable only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.
>
> ...
> A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability. ... [P]rocedural unconscionability involves "bargaining naughtiness" in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power.  Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms.

Id. at 102-03 (internal quotation marks and citations omitted).

In Tillman, the North Carolina Supreme Court addressed a situation where the plaintiffs obtained loans from the defendant which included single premium credit life and disability insurance as well as involuntary unemployment insurance.  The premiums were included in the principal loan amounts and financed over the term of the loan.  The loan agreements contained standard, boilerplate arbitration clauses about which the plaintiffs had no opportunity to negotiate. The plaintiffs brought suit claiming that they were not told the insurance was optional.  The Court found the arbitration provisions to be procedurally unconscionable, noting that the plaintiffs were

14

rushed through the loan closings by a loan officer who pointed out where the plaintiffs were to sign and initial the loan documents.  The insurance and arbitration clauses of the documents were not discussed at closing.  The defendant admitted that it would have refused to make loans to the plaintiffs if they had attempted to negotiate different terms.  It was undisputed that the plaintiffs were unsophisticated consumers contracting with corporate defendants who drafted the loan documents.[3]  Id. at 103.

In this case, Plaintiff Frank Klopfer has provided an affidavit in which he states the following: (1) he is retired "from the engineering field;" (2) his wife continues to be employed as a planning manager for Verizon; (3) he and his wife have previous experience in real estate transactions involving their primary residences; (4) he and his wife purchased Lot 207 at Queens Gap for $259,900.00 and $25,990.00 in earnest money was paid at the time the agreement was signed [Doc. 25-1 at 2]; (5) Michael McNamee, the attorney for Queens Gap Mountain, provided him with a copy of the purchase agreement for review which contained information about the golf club membership and restrictive covenants; (6) McNamee included tabs in the agreement indicating the spot at which the Klopfers were to initial, signifying

---

[3]The parties did not dispute that each plaintiff had limited financial resources and that their homes, which were being financed, were their most significant asset.  Id. at 94.

that they had read the arbitration clause; (7) the Klopfers had questions concerning certain items contained within the package sent by McNamee and spoke with him about those items which he explained; (8) the Klopfers did not have their own attorney and were not advised by McNamee to obtain one; and (9) the documents were drafted by counsel for Queens Gap. [Doc. 28-2]. Attached to the affidavit is the cover letter from McNamee in which he provided explanations concerning each of the documents attached. [Doc. 28-2 at 4-6].

Plaintiff Dustin Swartz provided an almost identical affidavit in which he disclosed that he purchased two lots. [Doc. 28-3]. The combined cost of these two lots was $761,800.00 with $10,000.00 being paid in earnest money. [Doc. 25-2; Doc. 28-3; Doc. 31 at 4]. Swartz did not disclose his occupation, if any, and did not disclose his previous experience with real estate transactions. [Id.]. The cover letter sent by McNamee to Swartz was identical to the one sent to the Klopfers with the exception of references to the lot numbers. [Doc. 28-3 at 1-9].

Based on these affidavits the Court is compelled to find that the Klopfers and Swartz were not unsophisticated purchasers who were rushed through a closing with no opportunity to question certain aspects of the closing documents. The Klopfers had a telephone conversation with McNamee in

which they asked for and received explanations of certain aspects of the closing documents. The fact that Swartz did not provide evidence as to whether he asked such questions does not indicate in any way that he did not read or understand the agreement. Biesecker v. Biesecker, 62 N.C. App. 282, 285, 302 S.E.2d 826 (1983) (A "person signing a written instrument is under a duty to read it for his own protection, and ordinarily is charged with knowledge of its contents."). The arbitration clause itself was printed in capitalized, bold-faced lettering and each buyer initialed underneath that clause indicating that they had read it. Id.; Raper, 180 N.C. App. at 421, 637 S.E.2d at 555 ("Persons entering contracts ... have a duty to read them and ordinarily are charged with knowledge of their contents."). The fact that McNamee placed a sticker at the spot for the initials does not imply the Plaintiffs had no choice but to sign. "A party may condition its willingness to enter into a contract with another party upon the agreement to resolve any dispute arising from their contractual relationship through arbitration. ... [T]he inclusion of an agreement to arbitrate is [not, in and of itself] procedurally ... unconscionable." Id. at 420; Lacey v. EMC Mortgage Corp., No. 5:10-cv-00173-RLV-DSC, 2011 WL 1337424, at *5 (W.D.N.C. Apr. 7, 2011) ("procedural unconscionability does not automatically arise when one party conditions its dealings with another party on the execution of an arbitration

agreement"). The amount of money involved in the purchase of these lots, which Plaintiffs admit were not to be their primary residences, defies their characterizations of themselves as unsophisticated purchasers. Raper, 180 N.C. App. at 421-22, 637 S.E.2d at 555 (evidence failed to show inequality of bargaining power). The Klopfers are clearly sophisticated buyers, based on their life and work experience. Id. Moreover, Swartz's ability to purchase two lots for in excess of $700,000.00 manifests some sophistication on his part. Id.

Based on this evidence, presented by the Plaintiffs, they have clearly demonstrated that no procedural unconscionability was present. "[W]hile the presence of both procedural and substantive problems is necessary for an ultimate finding of unconscionability, such a finding may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa." Tillman, 362 N.C. at 103, 655 S.E.2d at 370. Having found that the Plaintiffs have not shown procedural unconscionability in any degree, the Court finds it unnecessary to address the issue of substantive unconscionability.[4]

---

[4]The Court notes briefly that the Plaintiffs failed in any event to show substantive unconscionability. The Purchase Lot Agreements provided that the Seller could avail itself of remedies at law and equity whereas the Purchaser was limited to arbitration. This fact, previously addressed, does not show an agreement so one-sided as to be unconscionable. Fairview Developers, 187 N.C. App. at 173, 652 S.E.2d at 369 (parties are free to limit remedies for breach of contract). And, while the agreements provided

The Plaintiffs have not challenged whether this dispute falls within the scope of the arbitration clause and thus the issue is conceded. The language of the arbitration clause, nonetheless, clearly shows that all disputes between the parties were to be submitted to arbitration. The disputes at issue fall within that broad scope. The Court therefore finds and concludes that the parties entered into a valid and binding agreement to arbitrate and that the disputes at issue fall within the scope of that agreement.

**The ability of non-signatories to demand arbitration.**

The Plaintiffs' final argument is that none of the Defendants except Queens Gap have standing to demand or participate in arbitration because they were not signatories to the Lot Purchase Agreements.

As previously noted, at the time the motions to compel arbitration were filed, leave to amend the Complaint had not been granted. As a result, although McCarthy had been sued individually, his wife, Janis L. McCarthy (Janis), had not been named as a Defendant. Suit had also not been brought against either McCarthy or Janis in their capacities as Trustees of the Devin F. McCarthy Revocable Trust. On February 25, 2011, the Magistrate Judge allowed the motion to amend and these non-signatory Defendants were

---

for the possibility of cost-shifting to the non-prevailing party at arbitration, the Plaintiffs have offered no evidence that they would be unable to pay such fees. <u>Tillman</u>, 362 N.C. at 104-05, 655 S.E.2d at 371; <u>Bradford v. Rockwell Semiconductor Sys., Inc.</u>, 238 F.3d 549, 558 (4th Cir. 2001).

added. [Doc. 39]. On March 14, 2011, after having filed an Answer [Doc. 47], the McCarthy Defendants, including McCarthy as Trustee of the Devin F. McCarthy Revocable Trust and Janis, individually and as Trustee of the Devin F. McCarthy Revocable Trust, filed Notice of Adoption of Previously Filed Motion to Compel Arbitration and to Stay Proceedings. [Doc. 48]. They have thus joined in the motion to stay this action and to compel arbitration.

> [A]rbitration is a matter of contract interpretation and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. It is well-established, however, that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate.

> One such situation exists when the signatory is equitably estopped from arguing that a nonsignatory is not a party to the arbitration clause. Equitable estoppel precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity. In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of another's signature on a written contract precludes enforcement of the contract's arbitration clause when the party has consistently maintained that other provisions of the same contract should be enforced to benefit him.

> Applying these concepts, [the Fourth Circuit] ha[s] announced the following test for determining when equitable estoppel applies against a signatory to an arbitration clause:

>> Equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the ... agreement in asserting its claims against the nonsignatory. When

> each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.
>
> Because this legal test examines the nature of the signatory's underlying allegations against the nonsignatory, courts should examine the underlying complaint to determine whether estoppel should apply.

American Bankers Ins. Group, Inc. v. Long, 453 F.3d 623, 626-27 (4th Cir. 2006) (internal quotation marks and citations omitted).

The allegations set out in the Amended Complaint are determinative of this issue.[5] Id. The Plaintiffs concede that Queens Gap is a signatory to the contracts at issue. [Doc. 28 at 17]. Both Queens Gap and Devinshire Land Development, LLC (Devinshire) were wholly owned by Queens Gap Holding, LLC (Holding) from February 2007 through May 2009. [Doc. 39 at 3]. From May 2009 through the filing of the Amended Complaint, Queens Gap and Devinshire have been wholly owned by Queens Gap Acquisition, LLC

---

[5]As will be discussed later, the Plaintiffs' final argument is that equitable estoppel must be determined pursuant to North Carolina law. They are correct that in Arthur Andersen LLP v. Carlisle, __ U.S. __, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832 (2009), the Supreme Court stated that "traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through ... estoppel." Plaintiffs fail to note, however, that North Carolina's law of equitable estoppel is the same as Fourth Circuit law. Ellen v. A.C. Schultes of Md., Inc., 172 N.C. App. 317, 321, 615 S.E.2d 729, 732 (2005), rev. denied, 360 N.C. 575, 635 S.E.2d 430 (2006) (citing and following Fourth Circuit law as to equitable estoppel but noting claims in that case did not arise out of the contracts containing the arbitration clause).

(Acquisition).  [Id.].  Acquisition is owned by Defendant Keith Vinson (Vinson).  [Id. at 6].

McCarthy acquired much of the land which later became the Queens Gap subdivision.  [Id. at 4].  McCarthy personally managed the development and marketing of the venture and as the manager of Queens Gap, he executed over one hundred deeds through his attorney-in-fact, McNamee.  [Id.].

Holding, which owned Queens Gap and Devinshire until May 2009, is wholly owned by and is part of the corpus of the Devin F. McCarthy Revocable Trust dated September 14, 1994.  [Id.].  McCarthy is the sole beneficiary of that Trust.  [Id.].  McCarthy and Janis, as the Trustees of the Devin F. McCarthy Revocable Trust dated September 14, 1994 (the Revocable Trust), are the members and managers of Holding.  [Id.].

D.F. McCarthy Investments XVIII, LLC (Investments) has three members, McCarthy as Trustee of the Revocable Trust, Janis as Trustee of the Revocable Trust, and Shawn McCarthy as Trustee under the McCarthy Family Irrevocable Trust Agreement, dated December 20, 1998.  [Doc. 18 at 2].  Holding and Investments are each a Purchase Money Beneficiary under Purchase Money Deeds of Trust recorded in the Register of Deeds,

Rutherford County, North Carolina. [Id. at 5]. The Plaintiffs claim that these deeds of trust are the only assets of Investments and Holding. [Doc. 39 at 5].

Cove Creek, LLC (Cove Creek) was the owner of tracts of land which were to be used as the site for a lodge within the Queens Gap development. [Id. at 6]. The lodge was one of many amenities promised to be in the development. [Id.]. Cove Creek is owned by Acquisition which in turn is owned by Vinson. [Id. at 7].

In the Amended Complaint, it is alleged that McCarthy, acting through the limited liability companies identified above, acquired over 3,500 acres for the Queens Gap development at a cost of $12,000,000.00. [Id. at 18]. Queens Gap sold over $40,000,000.00 worth of lots in the development but the infrastructure required for residential construction was never completed. [Id.]. In the first two causes of action, Queens Gap, Devinshire,[6] and McCarthy are alleged to have induced the Plaintiffs to sign the Lot Purchase Agreements through fraud by misrepresenting and concealing material facts concerning the progress of construction of the infrastructure, including water and sewer systems and amenities such as a Jack Nicklaus golf course. [Id. at 42-46]. They also are alleged to have participated in a fraudulent scheme

---

[6]At the time alleged, Devinshire was owned by Holding, which in turn was owned by McCarthy and Janis.

to transfer ownership of the development to Vinson, who, like his predecessors, failed to provide the necessary infrastructure and amenities called for by the Lot Purchase Agreements while continuing to promise completion. [Id.]. These claims of the Plaintiffs make reference to or presume the existence of the Lot Purchase Agreements. Therefore, they arise out of and relate directly to those written agreements. Plaintiffs cannot assert such rights against the non-signatories based upon the Lot Purchase Agreements and deny the non-signatories' rights to demand arbitration in accord with those agreements. See American Bankers, 453 F.3d at 626-27.

In addition, "equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignator[ies] and one or more of the signatories to the contract." Brantley v. Republic Mortgage Ins. Co., 424 F.3d 392, 396 (4th Cir. 2005). Queens Gap was a signatory to the contracts and in the Amended Complaint is alleged to have engaged in concerted misconduct with McCarthy, Devinshire and Vinson. Id.

In the third claim for breach of an implied warranty, Queens Gap is alleged to have breached an implied warranty contained within a restrictive covenant which provided that the lots were for residential purposes only, [Id. at 46-47], which the Plaintiffs contend impliedly warrants that the lots would

be supported by infrastructure sufficient for residential construction. Plaintiffs openly assert that Queens Gap is a signatory to that warranty. Plaintiffs also assert the claims against Holding, McCarthy and Janis based on their ownership of Queens Gap. When allegations against "a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988). For these reasons the Plaintiffs are estopped from denying the rights of Holding, McCarthy and Janis to compel arbitration pursuant to the terms of the agreements despite their positions as non-signatories. Id.

In the fourth cause of action, it is alleged that Queens Gap and Devinshire registered the Queens Gap Subdivision with the Office of Interstate Land Sales Registration, as required by ILSFDA, and filed property reports. McCarthy, Devinshire, Queens Gap and Vinson are alleged to have been developers pursuant to the ILSFDA who violated that statute by falsely promoting the sale of lots; making misrepresentations about the construction of water and sewer systems; misrepresenting that amenities would be built which would increase the value of the lots; emphasizing that McCarthy would use his personal fortune to assure the construction of the necessary

infrastructure; and finally executing a "sham transaction" whereby the development was transferred to Vinson. [Id. at 48-50]. These allegations either directly reference the Lot Purchase Agreements or presume their existence and thus, this claim arises out of and relates directly to the Lot Purchase Agreements. Plaintiffs are therefore estopped from denying the rights of these non-signatories to compel arbitration. See American Bankers, 453 F.3d at 626-27. Furthermore, although the claim is based on a federal statute, it nonetheless arises out of the Lot Purchase Agreements and the Plaintiff may not use artful pleading to avoid assertions of claims based on that contract. Id.. If the Plaintiffs had never entered into those agreements, they would have no claims based on the ILSFDA against the non-signatories. Id.; Thomas v. Matrix System Automotive Finishes, LLC, No. 6:09-2169-HFF, 2010 WL 147956, at *8 (D.S.C. Jan. 14, 2010). Moreover, the Amended Complaint contains allegations of substantially interdependent and concerted misconduct by Queens Gap as the signatory and McCarthy, Devinshire and Vinson. See Brantley, 424 F.3d at 396 (noting that allegations of concerted misconduct among signatories and non-signatories may satisfy second means of obtaining equitable estoppel although not finding same in that case); Tattoo Art, Inc. v. Tat Intern., LLC, 711 F.Supp.2d 645, 653-54 (E.D.Va. 2010).

The fifth cause of action, which is asserted against Queens Gap, McCarthy, Devinshire, and Holding, sets forth multiple alleged violations of the North Carolina Unfair and Deceptive Trade Practices Act in connection with the development. [Id. at 50-53]. Claims are also stated against Acquisition, Investments, Vinson and Cove Creek. [Id. at 53-54]. These include allegations that between 2007 and 2009 the Plaintiffs were induced to sign the Lot Purchase Agreements and to purchase the lots because the Defendants 1) misrepresented that they intended to complete the infrastructure when the Defendants had no intention of doing so; 2) inflated the prices of the lots by the promises of the infrastructure, promising that the infrastructure would be completed through the use of personal funds from McCarthy; 3) misrepresented the adequacy of the water supply and sewer capacity; 4) participated in a sham transaction with Vinson; 5) sold off the tracts on which the amenities were to be built, including the Cove Creek lodge; and 6) performed limited, inappropriate construction solely to preclude enforcement of the subdivision bonds of which the Plaintiffs are the beneficiaries. [Id.]. Again, these claims relate directly to the contracts at issue. See American Bankers, 453 F.3d at 626-27. If the Plaintiffs had never entered into those agreements, they would have no claims based on the North Carolina statute against these non-signatories. Id.; Thomas, 2010 WL 147956, at *8. The

Amended Complaint also contains allegations of substantially interdependent and concerted misconduct by Queens Gap as the signatory and each of the other Defendants named in this cause of action. See Brantley, 424 F.3d at 396.

In the Sixth Cause of Action, all of the named Defendants, including McCarthy and Janis (individually and their capacities as Trustees), are alleged to have been unjustly enriched by the conduct described in the Amended Complaint. [Id. at 54-55]. As a result, it is alleged that the Plaintiffs are entitled to a constructive trust on the assets of the Defendants. [Id.]. Lastly, Plaintiffs present a claim for punitive damages against each Defendant based on the conduct described in the Amended Complaint which purportedly constituted fraud as well as willful and wanton conduct. [Id. at 55].

All of these claims arise out of and relate directly to the Lot Purchase Agreements while also alleging concerted misconduct. "[T]he plaintiff[s] ha[ve] asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." American Bankers, 453 F.3d at 629. Arbitration is appropriate as to the non-signatories because but for the existence of these contracts, the Plaintiffs would have no claims against the Defendants. Kirsh v. Finova Group, Inc., No. 07-1582, 2007 WL 4481158 (4th Cir. Dec. 20, 2007)

(nonsignatory unjustly enriched by manipulating company to sell notes to unsuspecting individual swindled out of investments; arbitration compelled).

> The legal principle underlying the theory of equitable estoppel rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage.  To be equitably estopped from denying the applicability of an arbitration clause, therefore, the signatory need not necessarily assert a cause of action against the nonsignatory for breach of the contract containing the arbitration clause.  Instead, estoppel is appropriate if in substance the signatory's underlying complaint is based on the nonsignatory's alleged breach of the obligations and duties assigned to it [by] the agreement, regardless of the legal label assigned to the claim.

American Bankers, 453 F.3d at 627-28 (internal quotation marks and citations omitted).  In other words, if the Lot Purchase Agreements had never been entered into by the Plaintiffs and Queens Gap, the Plaintiffs "would have no basis for recovery against" any of the Defendants.  Id. at 630.

The Plaintiffs' final argument is that the Defendants' citation to federal law concerning the doctrine of equitable estoppel is erroneous because it must be determined according to North Carolina law rather than federal law, citing Arthur Anderson, LLP v. Carlisle, __ U.S. __, 129 S.Ct. 1896, 1902, 173 L.Ed.2d 832, 839-40 (2009).  The argument is of no moment, however, since North Carolina law on this issue is no different from the law as articulated by the Fourth Circuit.  North Carolina courts have held in the context of contracts containing arbitration clauses that:

> [t]he obligation and entitlement to arbitrate does not attach only to one who has personally signed the written arbitration provision. Rather, well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties.

Ellen, 172 N.C.App. at 320, 615 S.E.2d at 732 (quoting Washington Square Securities, Inc. v. Aune, 385 F.3d 432, 435 (4th Cir. 2004)). A non-signatory to a contract may invoke arbitration on the grounds of equitable estoppel where the plaintiff has consistently maintained that other provisions of the same contract should be enforced. Ellen, 172 N.C. App. at 321, 615 S.E.2d at 732 (but noting in that case plaintiff had not done so); Raper, 180 N.C. App. at 422-23, 637 S.E.2d at 556; LSB Financial Services, Inc. v. Harrison, 144 N.C. App. 542, 548 S.E.2d 574 (2001). Moreover, even in this context, there is a presumption in favor of arbitration. Washington Square, 385 F.3d at 436. Such is the case here, and the McCarthy and Queens Gap Defendants may compel the Plaintiffs to arbitrate the dispute.[7]

**The motion to reconsider.**

The McCarthy Defendants and Janis moved for reconsideration of the Magistrate Judge's Order allowing the Complaint in this matter to be amended. [Doc. 44]. They subsequently filed a Notice of Adoption of

---

[7]It is also worth noting that three state court judges in four different state court actions have granted motions to compel arbitration made by the same defendants arising out the Lot Purchase Agreements involved in this case. [Doc. 51].

Previously Filed Motion to Compel Arbitration and to Stay Proceedings.[8] [Doc. 48]. Because the Court will compel arbitration as to all parties and claims, this motion is moot.

## O R D E R

**IT IS, THEREFORE, ORDERED** as follows:

1.  The Motion to Compel Arbitration and to Stay Proceedings [Doc. 24] of the Defendants D. F. McCarthy Investments XVIII, LLC; Queens Gap Holding Company, LLC and Devin McCarthy (the McCarthy Defendants) is hereby **GRANTED** and arbitration is hereby compelled;

2.  The Motion to Stay this Action and Compel Arbitration [Doc. 29] of the Defendants Queens Gap Mountain, LLC; Devinshire Land Development, LLC; Queens Gap Acquisition, LLC; Cove Creek, LLC; and Keith Vinson (the Queens Gap Defendants) is hereby **GRANTED** and arbitration is hereby compelled; and

3.  The Motion to Reconsider of Defendants D. R. McCarthy Investments XVIII, LLC; Queens Gap Holding Company, LLC; Devin McCarthy and Janis L. McCarthy or, in the alternative, Defendant Janis L. McCarthy's Motion to Dismiss [Doc. 44] is hereby **DENIED** as moot.

---

[8]Janis joined in the motion without waiving her pending motion in the event that arbitration was not compelled. [Doc. 48 at 3 n.1].

4.  Because the Court has compelled arbitration as to all issues, this action

is hereby **STAYED**.

**IT IS SO ORDERED.**

Signed: September 14, 2011

Martin Reidinger
United States District Judge